The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, Mr. Levitt, we'd be happy to hear from you and DiCocco v. psychiatrists employed as such by the Bureau of Prisons. The Bureau of Prisons at that time had a procedure that they called the physical ability test that required new hires to pass in order to keep their position in law enforcement. When the plaintiff was fired, she had been employed as a psychiatrist, not as a law enforcement officer, but the Bureau of Prisons had a sweeping requirement that everybody, everybody, no matter what you were hired for, was, in a case of emergency, a law enforcement officer and therefore had to successfully complete the PAT, physical abilities test. Well, I guess the rationale for it is that if you run into an emergency, it's an all-hands-on-deck situation. I mean, there are many, many security forces that apply a physical test to all of its members. I know in our courthouse, the court security officers have to take, have certain physical requirements. A great many organizations which are in the business of providing security of one form or another, a lot of them, not all of them, but a good many of them, have some sort of physical aptitude test. Well, this isn't necessarily that unusual. And I'm wondering if anytime you work through a system or anytime you work through a system of classifications, there are always going to be some of some situations within the class that may appear inequitable. I was thinking when I read your case about the vaccine requirements of the COVID-19 and all the different classes that were the priorities, 1A and 1B and this and that. And within those classes, there seemed to be some very inequitable cases of inclusion or exclusion or whatever. But that kind of goes along with the ability to classify and to set rules, kind of goes along with the whole idea of governance, doesn't it? Well, this case is a little bit different than that. In this case, she was not hired to be a law enforcement officer. She was hired as a 67 year old psychiatrist. And told that in order to keep that position, she had to pass the physical abilities test because of her mind. Mr. Leavitt, can we get to the real issue in this case? There's an argument about standing. And my question to you is, is constructive discharge a question of fact or a question of law? This is a question of fact. Because it's a fact she was not hired as a law enforcement officer. She was hired as a psychiatrist and was required to meet the standards for a law enforcement officer to not only be hired, but to keep that law enforcers job. Now, in her case, she was offered under their rules, a, what they call a chance to take the physical ability test again, a second time. Now, she was told that if she took it a second time, she had to do it within 24 hours. At the age of 67 at that time, she was much younger than virtually everyone else. And had the physical abilities of a 67 year old, not of a 36 or under year old. And when she was told that she could take the test the second time, she said, I can't take the test the second time in 24 hours. I'm exhausted. I cannot take it and pass it. And what's interesting is, it's not that she never took the test. She did take the physical abilities test and she was able to perform all of the things that were required under that test. Lifting something while she was climbing a ladder and so forth and so on. Strenuous things. She took them all, was able to do them all, but not as quickly as younger people and as people who were males. And that's why she- Mr. Lovett, can I ask you a separate question and sort of a narrow one? In count one of your complaint, which is your title seven claim, you allege a violation of section 2000E2. But that doesn't apply to federal employers. Right? 2000E16 applies to federal employers. So E2 is simply inapplicable and cannot be applied against the federal government. Tell me why we should address the title seven issues at all, given that you sued under a statute that does not apply to a federal employer. And it's only on the title seven count. But why should we even consider those issues? Well, she has two causes of action here. She has a civil rights cause of action under the Equal Employment Opportunity, and she has a claim that protects against age discrimination. And the things that- But to follow up on Judge Richardson's question, your claim seemed to be against the requirement here on the basis of disparate impact. And the question I have is that, and I think this was what Judge Richardson was aiming at, that 633 of the ADEA and 623 are written very differently. One of them appears to be aimed at anything which has an adverse effect. And if you are not a federal, if this was a private institution, you might have some headway with that. But under the Sandoval case, the statute that seems to be aimed at disparate treatment, not disparate effect. And the, but it seems to me that the claim that you're raising sounds like an adverse effect or a disparate effect claim with respect to this requirement. Well, this is what- And I don't understand, and it may have a disparate effect, but I don't understand that to be the standard of the violation. Well, the statute in the ADEA states very clearly that there shall not be any age discrimination. And it's an unlimited statement in the statute. That's it. And that means that you're not going to stop proceeding under that statute by virtue that there's no provision for disparate impact. Mr. Levitt, Mr. Levitt, let me ask you this. What impact does Gomez Perez have on your position? Supreme Court case Gomez Perez. Does it help you out? The ADEA federal sector provision that I was talking about was patterned directly after Title VII's federal section, federal sector discrimination ban. That's, that statement is at page four of your brief. I'm still trying to get to the basis because 633 uses the words based on age, which seems to me a clear reference to some sort of disparate treatment or when you look at the Sandoval case, you see that the language like on the grounds of or based on or on account of are all sort of intentionally focused. And yet your complaint with the, with the test requirement employed by the state. But I'm just not sure that the statute sets it up that way. I think the statute uses those words, if I recall correctly, based on age or whatever. I just think, well, Judge Richardson brought up the point, but it echoed a concern. Section 15 of the ADEA states in pertinent part, quote, all personnel actions affecting employees or applicants for employment who are at least 40 years of age, dot, dot, dot, shall be made free from any discrimination based on age. 29 USC section 633A. Wouldn't your case have been a little bit stronger if you'd taken the second test? Well, or at least tried. It doesn't matter whether you passed or failed, you might actually have passed given the percentages of people who have passed which you've been in the 98% of applicants over 40 passed and 98.6% of women applicants passed and and whether you passed or failed, wouldn't it have been? Wouldn't you have had a stronger case if you'd if you'd at least taken advantage of the chance to take a second test? Well, in International Brotherhood of Teens versus US 431 U.S. 24, 1977, quote, if any employer should announce his policy of discrimination by a sign reading whites only in quotes on the hiring door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal revolt. When a person's desire for a job, a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture. He is as much a victim of discrimination as is. He goes through the motions of submitting an application close quote. But I would add this to that. She testified that she was physically exhausted and that she could not pass that test physically within 24 hours, which is what they were asking her to do. I also would think in this line of a black person applying for a job and is fired and let's say, well, we don't we don't hire blacks here. But we do have a rule that you can reapply and she elects or he elects not to reapply. Would we say that therefore he has no standing or she has no standing to sue? That's what we have in this case. But we have more. We have a psychiatrist who's a doctor and she's exhausted and she knows she can't pass that test a second time. Now, why would she not take it a second time in addition? Because knowing that she can't and can't she takes it and doesn't pass it, she's going to be fired. And that's going to cause her when she looks for another position to defame herself. Why did you read your last job? Because I was fired. And that that's not what she wanted to do. She knew she couldn't pass that test. Why put herself in a vulnerable position that she has to defame herself after she's fired? It's better, she says, in her mind, and it's reasonable that I'm better off saying I may have here is a fear of failure, or subjective fear of failure. And it says in Clapper that that doesn't give rise to standing. I don't think so. I'm not sure I know. But But I don't think so. I didn't know that Judge Gibney stated that it does not appear to him that she would surely flunk the test a second time. That was very important in his decision on a motion to dismiss on something involving sexual gender discrimination on something like that. He disclosed a bit on a motion to dismiss. And I don't think that I think it's clear that a motion to dismiss was not proper under those circumstances. You had an intelligent woman, a doctor, a psychiatrist. There's no reason to believe that she's dishonest or lying about it. She's can't pass the test within 24 hours. And she knows about that. Now, that didn't impress the court. Fine. But the court put itself in the place of a jury. While it didn't impress the court, it could have impressed a jury. And I think the court was taking the role of a jury and was speculating. Well, the problem here is that there are some basic questions of law. And one involves standing and whether there's an adverse employment action or whatever and the and the whole way in which clapper figures into standing. And the other are the is the difference between the way in which the federal sector employer the statute as it applies to federal employees is different from is worded differently from the statute as it applies to private sector employees. And so I understand your point about the about the jury. But the problem is there's some some serious threshold, some serious threshold questions of law, which I think the district court was was bound to to consider. I can't see any red lights as your as your time expired, or do you still have more time? It expired some time ago. Okay. Well, thank you, Mr. Levitt. And unless one of our co panelists has some questions, we'll hear Mr. Lucier from him. I don't have any question. All right, Mr. Lucier. Good morning, Your Honors, and may it please the court. My name is John Lucier from the U.S. Attorney's Office in Richmond, and I represent the appellee, the Department of Justice. Dr. DeCoco lacked standing to bring her Title seven in a D.A. claims disparate impact claims because she did not allege she did not plead that she suffered an adverse employment action that was caused by the allegedly discriminatory conduct. And that is a physical abilities test. Can you talk just as an initial matter before you get into the analysis of why this was done at the standing stage as opposed to the 12 B six stage in the Supreme Court's been pretty clear that you can't conflate the merits of the claim with the standing analysis, right? And Trump versus Hawaii and otherwise, they've been clear that they're not the same. You have an arguable claim versus do you have a claim that would survive a 12 B six or different questions? Help me understand why the district judge here didn't just conflate those two and may well be precisely right on a 12 B six standard. But that's not a standing input. Well, Your Honor, just as an initial matter, we made a 12 B six arguments. That's basis in the record as well. The district court went on the standing side. And I think in this case, the district court was correct to do so. And that's because, um, all of the information that the court would have needed to make that determination, the standing determination and particularly the was there an injury that was causally connected to the complaint of conduct was apparent on the face of the complaint here taken as true at this stage. And so from the question is, so let me ask it. Maybe it may be a is your argument with respect to an adverse employment action, um, that the district court relied on for standing purposes. Is it any different than your 12 B six argument? Or do you agree that those those two arguments are identical whether it is a constructive discharge or not? Um, we we look at it the same way at 12 B one standing as a 12 B six. Is that your argument? Or is there a two arguments you make? I don't know. I don't know. Identical. I think substantively the same for purposes of the argument that we are making with respect. What are the differences? So help me understand what the difference would be at a 12 B six. The reason I say not identical is I'm just not 100% sure that I could that I can say that. But practically identical. I mean, there's no difference in the different. I mean, is the bar higher or lower for one in this case? In this case, Your Honor? No, because of the way that the complaint was pleaded. So conceptually, it may be. But as applied in this case, no, those two 12 12 B one standing analysis and a 12 B six plausibility analysis in this case are the same. And it may be may be all identical. Your Honor, can I ask you one more question that I'm will be quiet and let my colleagues talk. So I asked your colleague this question, and I'm not referring to the A. D. A. But on the title seven claim on J. 11, the plaintiff alleges a violation of 2000 e two. Um, and that plainly does not apply to a federal employer like the B O P. There may well be a claim under 2000 e 16, but there's not one under 2000 e two. It is. Am I right? First, am I right about that? And second, if I am right about that, do we have the ability to evaluate whether a claim under e 16 would survive even though there is no such claim in this complaint? Jed Richardson, you are right about that. The complaint cited the private sector title seven provision and also, I believe, the private sector A. D. A. Provision. Um, we responded to the complaint nonetheless. Um, the and address the complaint as having pleaded the correct statute. The analysis were you to apply the private sector analysis is very different from the federal sector analysis, Your Honor. So if we would have said, Well, here's the standard under the private sector statute, it would have been a different, different thing. But we we treated this. You You You waived the argument that he pled the wrong statute and construed it liberally. And this isn't a complaint of you, by the way. I'm not I'm not asking you to nitpick plaintiffs, right? I'm in part commend you for doing it. But you basically said, Okay, but we're gonna treat him as if he charged or alleged the right statutes. And that's how the district court treated it below. And the parties have briefed. That's correct, Your Honor. We just thought, you know, the complaint could have easily been amended and replaced the citation. And so there was Mr Lucier. Uh, in it also possible that Gomez Perez, uh, would, uh, allow, uh, him to proceed in in the federal sector provision. Judge Floyd, uh, Gomez Perez. No, we argue in in the briefs because Gomez Perez addressed an instance of intentional discrimination and the distinction, as Judge Wilkinson pointed out in questioning Mr Levin, the differences between the the based on age language, therefore applying to Gomez Perez would not extend to the desperate impact claim scenario. The from on on the standing as opposed to the A. D. E. A. Uh, sovereign immunity side on on the standing side that the key point in this case, as has a disparate impact in that females in over age 40 applicants failed the test at disproportionately higher rates. But she doesn't plead that she was asked to resign for having failed the test. What she instead pleads is that she had two chances to take the test, failed the first, then voluntarily declined, taking the second and specifically alleges that she did, though, did so because she feared that in her exhausted physical condition, she would be unable to complete it in a satisfactory time, declined to take her second and only then, only after having declined her second chance to take the test, was asked to resign or be terminated. So as Dr Coco pleaded her claim, what the B. O. P. Did the action by the employer here after her first failure was not an adverse employment action. It was B. O. P. Gave her the second chance to take the test, which she then voluntarily declined. That break in the causal chain is what deprives her of standing as she has pleaded it in this case. What about the clapper point that the point it's made in clapper that subjective fear of failure doesn't give rise to to standing because there are all kinds of people that say, Well, it would be, you know, futility is a very broad claim. You can you can say, Um, I just can't do this because it's futile. I'm not gonna I'm not gonna comply with this, uh, um, particular office rule or particular regulation or whatever. It would just be it would be futile for me to go through the hoops. And, um, I think I thought that the Supreme Court, um, in, um, clapper was trying to keep this futility argument, um, from expanding beyond all reasonable, all reasonable bounds because, you know, there are lots of lots of things, um, in everyone's life where you might have to take a test or you might have to, um, pass a physical exam or you might have to, uh, do this or do that to prove your qualifications. And if you just sort of give up on it and say, Well, it would be futile. Um, then that really punches a big hole in the ability of institutions of which a prison is one to sort of enact rules with with which, uh, people employed by the institution must comply. So you this this futility thing, if it gets if it gets rolling, um, it just makes governance a more difficult thing to do. And it makes institutional governance much more difficult to do. Um, and I think clapper was responding to that concern when it said that a subjective fear of failure, which is what I think you have here, doesn't give rise to standing. I thought that you could you can sort of look at standing and in two ways here. It I think, um, one is what you pointed out, which was it was an absence of a causal connection. It wasn't the, um, any kind of discrimination or whatever that led to, um, the fact that she left. Um, it was the causal the causal agent was a failure to take the second test. Um, but then there's also the clapper problem on one could be played, I suppose, under 12 B one and one could be dismissed under 12 B six. But it did seem to me that they were getting at the at the at the same thing. Um, what? What is your comment with with regard to that? I know you've touched on it in your earlier comments. Judge Wilkinson, you're exactly right. That clapper in that is that subjective fear is not sufficient to confer standing by itself applies here. And I think that the reason that it applies here is because she as she's pleaded it, she didn't complete the test. She didn't complete the application process. So as sort of a threshold matter, well, she in this case, in any plaintiff who doesn't complete an application process, who in turn is you'd have to get sort of past that. Well, then you didn't. You didn't finish applying, or you didn't apply at all. How do you? So how could you have been injured by a rejection there? You have to get around that. And there are ways that in the law for plans to get around that, specifically the feudal gesture doctrine. Um, and what that says is that you don't have to apply. If a application would be, you would face certain rejection from that application. Um, and conceptually, that's similar to how clapper plays in here, too, because what she's saying is I didn't take what she's pleading around is I didn't take the second test because I feared that in my exhausted state, I wouldn't pass it. That fear is not sufficient here under clapper, because she has also pleaded that the overwhelming majority of all people, uh, females and overage include average 40 included past the test. But Council, let me just make sure I clapper is a case where the subjective fear was not supported by any, like actual and in that case surveillance, right? And so there's not. It's not certainly impending and set interception. But here it is slightly different, right? Because she took the test. She failed the test, right? And so this isn't a merely a subjective fear, right? She actually took the test. She failed it, and they asked her to take it again. And she says, Listen, I can't pass it, right? I mean, that that to me does not look like this purely subjective inquiry that we talk about in clapper. Instead, it would be as if in clapper, they said, Yes, we know we here's the evidence that we've been intercepted for the last six months, right? We don't. Maybe we don't have absolute certainty that we will be intercepted next month, but we've been intercepted six months in a row. And so we can reasonably say not just subjective fear, but it's a reasonable conclusion that there's a certainty of impending interception, giving what happened in the six prior months. Same thing here. There's certainly more than just a mere, bald, subjective fear. No, Judge Richardson, that and the relation that how clapper relates to the feudal gesture doctrine is sort of the next step of what I was gonna say, and that is that the the injury here, because it's a disparate claim here because it's a desperate impact claim, is a policy that falls more harshly on one group than another, and therefore harms members of that group or that class. So the subjective fear here, the reason that clapper applies is because it's an individual subjective fear. Because for the class, the complaint also shows that the overwhelming majority of people pass it. So the the interesting thing here, too, is that a lot of times people do better on us on a second test, because they know what to expect. You've, you've, you fail the bar. Once a lot of people fail the bar first time out, then they take the bar again, and they pass. And part of the reason that they pass probably is because they're more familiar with what the bar is going to be asking. And the same goes with the old SATs. A lot of people and LSATs, a lot of people take them two and three times to get a presentable score. So it does seem to me you can't just say, well, every time you've been asked to take a second test that that that could still involve a subjective fear of failure. A lot of people have a subjective fear of failure after they failed it once. But a lot of people do a whole lot better when they take tests twice. That was true with the physicals in the in the army. There were a whole lot of people that that didn't pass, you pass a certain test to get out of basic training, and a lot of people didn't pass it the first time. And they did, they passed it the second time. You know, he was all about. So I, I do think that there's that twin factors that that flow in here. And one is, is plausibility on the 12B6. And the other is clapper on the 12B1. That seems to me a threshold problem. But excuse me, Mr. Lucier, I didn't mean to throw your argument off track. No, sir, not at all. Related to that, Judge Wilkinson, I mean, the there is and this is responding to Mr. Levitt's book and briefing and then in this presentation today. This is this would be if you find if you find for the appellee, this would be a very narrow decision, because it's based on particular facts as pleaded in this complaint. That what I mean by that is, this would not foreclose claims for disparate impact generally, of course not, but it also wouldn't foreclose claims when someone doesn't complete an application process or doesn't take a second test. That's already accounted for in the law under the feudal doctrine. But the facts that one would need to plead to come within the feudal gesture doctrine are just not in this complaint. That she was not faced with certain rejection on the second time. And the reason that we know that is because she also pleaded that the overwhelming majority of people in her groups, the at issue groups here, female and over age 40, pass. So it would not have been futile for her to complete the application process under these specific facts. And indeed, she says the reason I didn't take it the second time was because I feared that I was exhausted and therefore I would fail, which is an individual subjective fear for a claim that relates to class wide harms and class wide disparate impacts. And so this is a very narrow case at the end of the day. The law already allows for people in certain instances to not apply or to not complete tests and still bring disparate impact claims. That's just not facts that were pleaded here. That's all. All right. Thank you, Mr. Lucier. And if my co-panelists have no further questions, I'd like to hear from Mr. Levitt in rebuttal. All right, your honors. This case does not involve someone taking a second test and being able to answer questions that she or he didn't answer quite properly in the first test. That's not what this is. This is a physical abilities test from a doctor and a psychiatrist within 24 hours who is exhausted. Now, maybe she's lying. OK, maybe she's lying, but unlikely is she lying and she has a good reason not to take a test that she feels is not simply fearful, but is she won't be able to pass it, particularly within 24 hours. And that's the difference of all these other cases. But also important here, when you go back to the early days of Justice Black and Justice Douglas and the early days of handling racial discrimination in the factories where the black employees got the lesser jobs and the whites got the more important jobs. When you go back to that, that's what we're talking about here, not black and white. We're talking about black women versus Hogan. Quote, parties who seek to defend gender-based government action must demonstrate an, quote, exceedingly persuasive justification, close quote, for that action. And there are other Supreme Court cases that we've put in the brief where going back for a second bite at the apple won't work. And this is one of those cases. Now, Judge Gibney dismissed on a motion to dismiss without prejudice, but not without giving his opinion and speculation. And his opinion and speculation, which only a jury should have done, is that it doesn't appear that she might not have been able to pass the test a second time. So said Judge Gibney, although the latter one might be the correct one. And that's what we have here. And one other thing, the preamble to the requirement for the test by the government in this case was that everyone's going to be a law enforcement officer in a time of emergency, and so you got to pass it. What happens if you take it and you pass it? When do you take it again? Never. You never need to take it again. Once you have passed the initiation, you're in the fraternity. You're a fraternity member for life. You passed it. Once you pass it, you never have to take it again. You can develop all kinds of weight problems, physical problems. You're in. You passed it. You're in the fraternity. That's what's involved in this case. And that's what concerns clearly the Supreme Court in more than one decision. And they're going to read that language in the ADEA, and they're going to say it's got to mean something and can't be rewritten by anyone except Congress. All right. Thank you very, very much, Mr. Leavitt. We appreciate that. And if our co-panelists have no further questions of you, I'll ask the courtroom deputy to adjourn court. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Henry F. Floyd, Julius N. Richardson